UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES TURPIN, et al. )<br>   Plaintiffs )<br> )<br>v. )<br> )<br>DISTRICT OF COLUMBIA )<br>A Municipal Corporation )<br> )<br>   and )<br> )<br>OFF. MICHAEL CHEN )<br>In his individual capacity )<br> )<br>   and )<br> )<br><u>OFF. KYLE LARRAIN</u> )<br><u>c/o Metropolitan Police Department</u> )<br><u>Sixth Police District</u> )<br><u>5002 Hayes Street, N.E.</u> )<br><u>Washington, D.C. 20019</u> )<br><u>In his individual capacity</u> )<br> )<br><u>**Serve:**  Chad Copeland, Stephanie Litos</u> )<br><u>   and Tonia Robinson</u> )<br><u>   Office of the Attorney General</u> )<br><u>   Civil Litigation Division</u> )<br><u>   400 Sixth Street, N.W.</u> )<br><u>   Washington, D.C. 20001</u> )<br> )<br>   Defendants ) | Civil Action No. 22- CV -01807 (TJK) |

**COMPLAINT**

  COMES NOW, Plaintiffs, Charles Turpin and Regina Jackson, by and through their

attorney, John F. Pressley, Jr., Esq., and for their Complaint against the defendants herein, allege

as follows:

**I. INTRODUCTION**

1.  This is a civil action brought pursuant to federal civil rights law (42 U.S.C. §1983) and

  the common law of the District of Columbia seeking monetary damages and injunctive

relief for violation of the plaintiff's civil, constitutional and common law rights.

## II. JURISDICTION

2.   This Court has general civil subject matter jurisdiction over this action pursuant to D.C. Code §11-921 (2001 ed., as amended).

## III. D.C. CODE § 12-309 COMPLIANCE

3.   D.C. Code § 12-309 provides in pertinent part that

> . . . an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309. Accordingly, two types of notice can satisfy the requirements of Section 12-309. (1) a written notice to the Mayor of the District of Columbia, or (2) a police report prepared in the regular course of duty. Id..

**A.   Timeliness of § 12-309 Notice**

4.   By Orders issued March 18, 2020, March 19, 2020, May 14, 2020, June 19, 2020, August 13, 2020, November 5, 2020, January 13, 2021, March 30, 2021, May, 12, 2021, July 14, 2021, September 11, 2021, the District of Columbia Superior Court Chief Judge ordered that all deadlines and time limits in statutes[1], court rules, and standing and other orders issued by the Court that would otherwise expire before November 21, 2021, including statutes of limitations, are suspended, tolled, and extended during the period of the current judicial emergency. Suspension, tolling, and extension will continue, unless

---

[1] There was no exception for D.C. Code § 12-309.

otherwise specified in this Order, until at least Friday, April 8, 2022.

5. The § 12-309 notice in the instant case was delivered to Mayor's Correspondence Unit via certified mail on March 7, 2022. Pursuant to the fore mentioned orders of the Chief Judge, the § 12-309 notice in the instant case is timely with respect to any common law claim by the Plaintiff in the instant case.

**B.   Alternative § 12-309 Compliance: Police Reports and Supplementation**

6. As noted, supra, § 12-309 notice can also be provided pursuant to a written Metropolitan Police Department police report. Case law has further determined that the police report can be supplemented by additional documents and evidence. Enders v. D.C., 4 A.3d 457, 467–69 (D.C. 2010)(this jurisdiction has not required that the District be given notice of an impending suit in a single document). As long as "the District is given facts that would allow it to comprehend through a reasonable investigation the circumstances underlying the claim, the notice is sufficient." Id., at 468; See Hurd v. District of Columbia, 106 A.2d 702, 704 (D.C.1954); Lesesne v. Doe, 65 F. Supp. 3d 1, 6 (D.D.C. 2014).

7. In the instant case, the key police report required pursuant to the arrests of the Plaintiffs would be the PD Form 163 (Arrest/Prosecution Report). This report would provide the initial information and factual background to determine whether or not there is probable cause to arrest and prosecute the case.

8. Indeed, the information required to make the initial arrest and prosecution decision is the same information required by D.C. Code § 12-309, i.e."the approximate time, place, cause, and circumstances" in conjunction with the basis for the arrest of the plaintiffs.

9. In addition, the PD form 163 was supplemented by the medical records from the United

Medical Center where the Plaintiffs were transported for observation during the booking process. Yet another police report is required whenever arrestees are transported to a hospital.

10. As a result, compliance with § 12-309 is more than achieved by either the actual notice to the Mayor or the required police reports and supplemental records generated by the police in the regular course of duty.

### IV. THE PARTIES

11. The Plaintiff CHARLES TURPIN, at all times relevant to the Complaint, was a resident of the District of Columbia.

12. Plaintiff REGINA JACKSON, at all times relevant to the Complaint, was a resident of the District of Columbia.

13. Defendant DISTRICT OF COLUMBIA is a municipal corporation that operates and manages the Metropolitan Police Department (MPD).

14. Defendant OFF. MICHAEL CHEN, at all times relevant to the Complaint, acted under color of the law of the District of Columbia and within the scope of his employment as a Metropolitan Police Department police officer.

15. Defendant OFF. KYLE LARRAIN, at all times relevant to the Complaint, acted under color of the law of the District of Columbia and within the scope of his employment as a Metropolitan Police Department police officer.

### V. STATEMENT OF FACTS

16. On the night of September 18, 2020, the ~~Plaintiffs, Charles Turpin and his friend Regina Jackson, were relaxing in Mr. Turpin's apartment (the subject premises) at 1941 Naylor~~

<u>Road, S.E. Apt.#13, Washington, D.C.</u> <u>defendant Metropolitan Police Officers Kyle Lorrain and Michael Chen responded to the apartment of Plaintiff Charles Turpin at 1941 Naylor Road, S.E. Apt.#13, Washington, D.C, allegedly in response to a "domestic fight" complaint</u>.

17. ~~The solitude of the Plaintiffs', however, was interrupted by an unexpected knock at the door. Upon opening the door, Mr. Turpin was confronted by defendant Metropolitan Police Department (MPD) Officer Michael and another police officer.~~

18. ~~Upon reaching the apartment, the officers encountered Mr. Turpin who was yelling from the third floor window of his apartment..~~

19. ~~Officer Chen, who had no warrant, claimed that there was a disturbance at Mr. Turpin's apartment. Despite the claim by officer Chen, Mr. Turpin contended that there was no disturbance or problem in need of police assistance.~~

20. ~~Indeed,. there was no noise, no emergency, or any other evidence of a disturbance in the apartment, where Mr. Turpin had been relaxing in the outer room while Ms. King relaxing in the bedroom, where she had been since the previous day.~~

21. ~~Despite the clear lack of any evidence of a disturbance or emergency, Off. Chen indicated that he was coming in and proceeded to pushed past Mr. Turpin and enter the apartment, without permission of Mr. Turpin.~~

22. ~~Upon entering the apartment and further seeing that there was no disturbance or emergency, Off. Chen, nonetheless, proceeded to search the premises. As part of the search, he entered the bedroom, where Ms. Jackson had been relaxing.~~

23. ~~During the course of Off. Chen's search of the premises, he confiscated marijuana related~~

~~drug paraphernalia, Mr. Turpin's cell phone and an undetermined amount of money. Off. Chen then proceeded to arrest and handcuff Mr. Turpin and Ms. Jackson. Off. Chen, at the time refused to indicate the basis for the arrest. During the course of these events, Ms. Jackson lost her medication.~~

24. Upon reaching the apartment, the officers encountered Mr. Turpin who was yelling from the third floor window of his apartment.

25. Officer Larrain engaged in a brief conversation with Mr. Turpin in which he asked Mr. Turpin if he could speak with him outside of his apartment, at the door.

26. Mr. Turpin agreed to speak with Officer Larrain at the door of his apartment.

27. Upon reaching the apartment, Officer Larrain knocked at the door. Mr. Turpin inquired who is it. Officer Larrain responded that it was the police.

28. As Mr. Turpin walked toward the door, apparently, by force of habit he said "come in". Officer Larrain, however, turned the door nob and immediately moved away from the door in apparent apprehension, expressing no interest in going into Mr. Turpin's apartment at that time.

29. Mr. Turpin subsequently came out to the front of his apartment where they had agreed to meet and speak with Officer Larrain.

30. Although no noise at all emanated from the apartment, Officer Larrain, ostensibly there for a noise complaint, proceeded to pummel Mr. Turpin with questions as to what was going on and was anyone else in the apartment. Mr. Turpin, in response held his hands out and did not immediately verbally respond to Officer Larrain's questions. He appeared to be somewhat inebriated.

31. After briefly speaking with Officer Larrain as he promised to do, Mr. Turpin turned and walked toward his apartment. At the same time Officer Larrain, who did not have a warrant, boldly put his hand up and held the door open as he and Officer Chen both followed Mr. Turpin into his apartment. At no time did either officer ask Mr. Turpin for permission to enter his apartment. At no time did Mr. Turpin give permission for the officers to enter his apartment.

32. Once in the apartment, Officer Larrain continued his interrogation of Mr. Turpin as to what was going on and whether anyone else was in the apartment.

33. Mr. Turpin pointed out that plaintiff, Regina Jackson, was also in the apartment. He indicated that she was in the bedroom of the apartment of the apartment. Once again, the officers followed Mr. Turpin into the bedroom, without either officer either asking for or receiving permission from either Mr. Turpin or Ms. Jackson to enter the bedroom.

34. Once in the bedroom, Officer Larrain proceeded to interrogate Ms. Jackson, who did not respond to any of Officer Larrain's inquiries.

35. While in the bedroom, Mr. Turpin posed a question to Officer Larrain. He asked simply "[h]ow it is that you are able to be in my house?" Officer Larrain responded "[w]e're here because we got a call for service."

36. Officer Larrain soon discovered what he believed was illegal drugs and paraphernalia. As a result, Ms. Jackson and Mr. Turpin were promptly handcuffed and arrested.

37. Mr. Turpin subsequently came out to the front of his apartment where they had agreed to meet and speak with Officer Larrain.

38. Although no noise at all emanated from the apartment, Officer Larrain, ostensibly there

for a noise complaint, proceeded to pummel Mr. Turpin with questions as to what was going on and was anyone else in the apartment. Mr. Turpin, in response held his hands out and did not immediately verbally respond to Officer Larrain's questions. He appeared to be somewhat inebriated.

39. After briefly speaking with Officer Larrain as he promised to do, Mr. Turpin turned and walked toward his apartment. At the same time Officer Larrain, who did not have a warrant, boldly put his hand up and held the door open as he and Officer Chen both followed Mr. Turpin into his apartment. At no time did either officer ask Mr. Turpin for permission to enter his apartment. At no time did Mr. Turpin give permission for the officers to enter his apartment.

40. Once in the apartment, Officer Larrain continued his interrogation of Mr. Turpin as to what was going on and whether anyone else was in the apartment.

41. Mr. Turpin pointed out that plaintiff, Regina Jackson, was also in the apartment. He indicated that she was in the bedroom of the apartment of the apartment. Once again, the officers followed Mr. Turpin into the bedroom, without either officer either asking for or receiving permission from either Mr. Turpin or Ms. Jackson to enter the bedroom.

42. Once in the bedroom, Officer Larrain proceeded to interrogate Ms. Jackson, who did not respond to any of Officer Larrain's inquiries.

43. While in the bedroom, Mr. Turpin posed a question to Officer Larrain. He asked simply "[h]ow it is that you are able to be in my house?" Officer Larrain responded "[w]e're here because we got a call for service."

44. Officer Larrain soon discovered what he believed was illegal drugs and paraphernalia. As

a result, Ms. Jackson and Mr. Turpin were promptly handcuffed and arrested.

45. Mr. Turpin and Ms. Jackson were subsequently taken to the Metropolitan Police Department Sixth District Headquarters where they were booked.

46. Mr. Turpin and Ms. Jackson were then transported to the United Medical Center, where Ms. Jackson was handcuffed to the bed.

47. Mr. Turpin and Ms. Jackson were then returned to the Sixth District Police Headquarters and were subsequently transferred to the Department of Corrections Central Cell Block, 300 Indiana Ave., NW.

48. Mr. Turpin and Ms. Jackson spent the night locked up at the Central Cell Block and were released the next day, pursuant to the case being no papered. See Exh. No. 1 (No Paper/No Charges Slip)(attached).

## COUNT I
(42 U.S.C. §1983 - Fourth Amendment - Illegal Entry - Offs. Larrain and Chen)

49. The Plaintiffs adopts and incorporates each and every allegation contained in paragraphs 1 - 48 as if fully set forth herein.

50. On the night of September 18, 2020 at 10:00 p.m., Plaintiffs Charles Turpin and Regina Jackson, were in lawful possession of Mr. Turpin's apartment at 1941 Naylor Road, S.E., Apt.#13, Washington, D.C. (the subject premises). Mr. Turpin had a lease of the subject premises.

51. Ms. Jackson had spent the previous night at the subject premises. As a result, both Plaintiffs had a reasonable expectation of privacy in said premises.

52. Defendant Metropolitan Police Department (MPD) Officer Kyle Larrain ~~Michael Chen~~

knocked on the door to Mr. Turpin's apartment. Mr. Turpin opened the door ~~whereupon Off. Chen indicated his apparent belief that there was a disturbance at the apartment~~. <u>and stepped outside of the apartment to talk as Mr. Turpin and Off. Larrain had agreed to do.</u>

53. The open door to the apartment failed to reveal any evidence of a disturbance. There was no loud noise, no argument or altercation. <u>The officers presented no warrant or requested permission to enter the apartment.</u>

54. At the time of Off. Chen's knock at the door, Mr. Turpin had, in fact been relaxing ~~and watching the television~~ in the outer room of the apartment and Ms. Jackson was in the bedroom resting.

55. ~~Off. Chen, however, disregarded the plainly exculpatory lack of any evidence of a disturbance and proceeded to push past Mr. Turpin and brazenly force his way into Mr. Turpin's apartment, despite the lack of permission from Mr. Turpin to do so.~~ <u>After responding to Off. Larrain's inquiries what was going on and whether or not there was anyone else in the apartment, Mr. Turpin turned and walked into his apartment. The Officers followed Mr. Turpin into his apartment, notwithstanding the fact that they did not have a search warrant or permission from Mr. Turpin to enter his apartment both Officers Larrain and Chen entered the apartment without the slightest legal right or basis to do so.</u>

56. ~~Prior to the forced entry of Off. Chen, there had been no imminent harm or exigent circumstance justifying the extraordinary action by Off. Chen to force his way into Mr. Turpin's apartment without a warrant or other legal authority to do so.~~

57. At the time of ~~Off. Chen's forced~~ <u>the officers illegal</u> entry <u>into the apartment</u>, the right of

10

Plaintiffs Charles Turpin and Regina Jackson to be secure in his home without being subjected to a~~ ~~police officers illegally entering his home without a warrant or consent, in non exigent circumstances, was well established.

58. Because the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, it is a basic principle of Fourth Amendment jurisprudence that searches and seizures inside a home without a search warrant are presumptively unreasonable.

59. The right of Plaintiffs to be secure in Mr. Turpin's home without having to worry about the defendant ~~Off. Chen~~ illegally entering his home, without a warrant, in nonexigent circumstances was well established at the time of defendant's illegal entry.

60. Moreover, no reasonable police officer could have believed that the facts in this case come within one of a few specifically established and well-delineated exceptions to the search warrant requirement.

61. Accordingly, the intentional, illegal ~~forced~~ entry, without a warrant, <u>without permission</u>, contravened Plaintiffs' right to privacy and their right to be secure in the home of Mr. Turpin. and was in violation of the Fourth Amendment and 42 U.S.C. § 1983.

**COUNT II**
(<u>42 U.S.C. §1983</u> - Fourth Amendment - Illegal Search and Seizure - Off<u>s</u>. <u>Larrain and</u> Chen)

62. The Plaintiff<u>s</u> adopt~~s~~ and incorporate~~s~~ each and every allegation contained in paragraphs 1 - 61 as if fully set forth herein.

63. Subsequent to the wrongful and grossly illegal ~~and forced~~ entry of ~~Offs.~~<u>Officers Larrain and</u> ~~Michael~~ Chen into Mr. Turpin's apartment, the officers ~~Off. Chen~~, despite clearly

observing that there was no disturbance in the apartment, proceeded to conduct an illegal search of the premises, again without the permission of Plaintiffs Charles Turpin ~~and~~ or Regina Jackson.

64. The <u>illegal</u> search of the premises, in turn, proceeded from the outer area of the apartment, where Mr. Turpin had been relaxing ~~was watching television~~, to the bedroom, where Ms. Jackson was resting.

65. During the course of the search, and prior to the arrest of Plaintiffs, ~~Offs.~~Officers <u>Larrain and</u> Chen seized the property of Mr. Turpin including currency and paraphernalia used my Mr. Turpin while legally indulging in the legal recreational use of marijuana in the privacy of his home.

66. Moreover, ~~Offs~~ Officers <u>Larrain and</u> Chen had no probable cause to believe that Mr. Turpin's apartment contained evidence of a crime and contraband.

67. The right of Plaintiffs to be secure in Mr. Turpin's home without having to worry about the defendant ~~Offs~~.Officers <u>Larrain and</u> Chen conducting an illegal search and seizure, without a warrant, was well established at the time of defendants' illegal search and seizure.

68. Said blatant and illegal search and seizure on the part of ~~Offs~~.Officers <u>Larrain and</u> Chen, without a warrant and predicated on ~~his~~ the officers' illegal entry, contravened the Plaintiffs' fundamental right to privacy and violated the Fourth Amendment and 42 U.S.C. § 1983.

**COUNT III**
(<u>42 U.S.C. §1983</u> - Fourth Amendment - False Arrest - Offs. <u>Larrain and</u> Chen)

69. The Plaintiffs adopts and incorporates each and every allegation contained in paragraphs 1 - 68 as if fully set forth herein.

70. Subsequent to the illegal entry into the home of Mr. Turpin, ~~Off.~~ Officers Chen into Mr. Turpin's apartment, the officers proceeded to further compound his patently illegal behavior by handcuffing and arresting Mr. Turpin and Ms. Jackson (without explanation to the Plaintiffs) on drug related charges, notwithstanding the fact that he had no warrants and the supposed reason for the illegal entry was based on an unsubstantiated, meritless allegation that there was a disturbance at the premises, unrelated to drugs.

71. Clearly, a reasonable police officer would never have proceeded this far. Indeed, a reasonable police office never would have entered the premises upon observing <u>that there was no noise or disturbance</u> ~~the premises upon viewing the premises~~ once the door was opened.

72. It is, furthermore, clear that a reasonable police officer would know that an arrest ~~resulting from~~ <u>based upon evidence gathered from</u> an illegal <u>entry</u> and presumptively unreasonable ~~illegal entry~~ <u>search and seizure</u> would be subject to the exclusionary rule. In other words, the reasonable officer would have known that the arrest could not have proceeded without a warrant as any evidence as a result of the illegal entry would have been excluded. Indeed, the arrest had no legal or rational basis.

73. Just as the Fourth Amendment was violated by ~~Offs.~~ Officers <u>Larrain and</u> Chen's initial illegal entry and violation of Mr. Turpin's and Ms. Jackson's right to privacy, ~~so was it was~~ the Fourth Amendment was further violated by the subsequent illegal, false arrest of the Plaintiffs.

74. The arrest of the Plaintiffs under the foregoing circumstances resulted in the unnecessary and illegal detention, restraint and loss of liberty of the Plaintiff, without probable cause or pursuant to a valid arrest or search warrant, and, thus was in violation of the Fourth Amendment and 42 U.S.C. § 1983.

## COUNT IV
(Trespass - District of Columbia, Offs. Larrain and Chen)

75. The Plaintiffs adopts and incorporates each and every allegation contained in paragraphs 1 - 74 as if fully set forth herein.

76. On the night of September 18, 2020 Plaintiff Charles Turpin was in lawful possession of his apartment at 1941 Naylor Road, S.E., Apt.#13, Washington, D.C. (the subject premises) pursuant to a valid lease of the subject premises.

77. Defendant ~~Off.~~ Officers Larrain and Chen ~~forcibly~~ entered the subject premises through stealth, without the permission of Mr. Turpin who pursuant to the contours of his lease, had a right to control the property and exclude others.

78. ~~Offs. Chen's~~ Subsequent to ~~forcing his way into~~ surreptitious entry into Mr. Turpin's home without permission, ~~Offs.~~ Officers Larrain and Chen continued to illegally remain on the premises and commence and conduct an illegal search, ~~and go~~ going about the subject premises as ~~he~~ they pleased, ignoring Mr. Turpin's indication that there was no disturbance in the premises and no legal basis for ~~Off. Chen~~ the officers to have entered the subject premises in the first place[2].

---

[2] As the Defendant officers continued to interrogate the Plaintiffs in the bed room of Mr. Turpin's apartment, Mr. Turpin inquired of Officer Larrain as to "how is it that you are able to be in my house . . .". The only answer that Officer Larrain could provide is that "we're here because we got a call for service". A reasonable, trained and honest police officer would know better.

79. Said illegal <u>and furtive</u> entry into Mr. Turpin's home by Off<u>s</u>. <u>Larrain and</u> Chen was a gross violation of Mr. Turpin's possessory interest and rights in the subject property and was an illegal trespass for which Mr. Turpin seeks compensatory and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Charles Turpin and Regina Jackson pray that this court:

a. Award $1,000,000 in compensatory damages to each Plaintiff against the individual defendant~~(s)~~;

b. Award $500,000 in punitive damages to each Plaintiff against the individual defendant~~(s)~~;

c. Award Plaintiffs costs against the individual defendant~~(s)~~;

d. Award Plaintiffs attorney's fees; and

e. Grant such other relief as it may deem just and proper.

*/s/ John F. Pressley, Jr.*
_____
John F. Pressley, Jr. #379716
7600 Georgia Avenue, N.W., Suite 206
Washington, D.C.  20012
(202) 723-8800
(202) 723-8801 (fax)
 jfpressley@verizon.net
*Attorney for Plaintiffs*

JURY DEMAND

Plaintiffs Charles Turpin and Regina Jackson demand a trial by jury on all issues so triable.

*/s/ John F. Pressley, Jr.*
_____

John F. Pressley, Jr.