UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES TURPIN, et al.              )
       Plaintiff                           )
                             )
       v.                                      )          Civil No. 22-CV-1807 (TJK)
                             )
DISTRICT OF COLUMBIA, et al.        )
       Defendants                          )
_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

       Plaintiffs Charles Turpin and Regina Jackson, by and through counsel, hereby opposes

Defendants' Motion for Judgment on the Pleadings. In support of said opposition, Plaintiffs

states as follows.

1.      The Defendant officers[1] never once asked for or sought consent to enter Mr. Turpin's

       apartment.

2.      The Plaintiffs did not consent to the entry of the Defendant officers into Mr. Turpin's

       apartment.

3.      There was no consent for the Defendant officers to enter into the bedroom of Mr.

       Turpin's apartment.

4.      The Defendant officers are not entitled to qualified immunity.

5.      The search and subsequent arrest of the Plaintiffs pursuant to a warrantless entry, without

       exigent circumstances violated the Fourth Amendment.

6.      Police officers entry into Mr. Turpin's apartment was common law trespass.

       In further support of this opposition to Defendants' Motion for Judgment on the

---

[1] Officer Kyle Larrain has not yet been served. He is so referred to as a potential
defendant for the sake of brevity when reference is made to both officers.

Pleadings Plaintiff refers the Court to the memorandum of points and authorities attached

hereto and incorporated herein by reference.

Respectfully submitted by,

/s/ John F. Pressley, Jr.

_____

John F. Pressley, Jr. #379716
7600 Georgia Avenue, N.W., Suite 206
Washington, D.C. 20012
(202) 723-8800
(202) 723-8801 (Fax)
jfpressley@verizon.net
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this  **14th**  day of July, 2023 a copy of Plaintiff's Opposition to

Defendants' Motion on the Pleadings was electronically mailed to:

Jessica Krupke
James C. Underwood III
Assistant Attorneys General
400 Sixth Street, NW
Washington, DC 2001

/s/ John F. Pressley, Jr.

_____

John F. Pressley, Jr.

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES TURPIN, et al.            )
      Plaintiff                )
                                 )
    v.                           )          Civil No. 22-CV-1807 (TJK)
                                 )
DISTRICT OF COLUMBIA, et al.     )
      Defendants               )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

**Background**

The instant case arose in connection with a police intervention pursuant to a noise complaint. On the late night of September 19, 2020 the Metropolitan police officers Kyle Larrain and Michael Chen responded to the apartment building of Plaintiff Charles Turpin. As the officers approached the building they could hear Mr. Turpin yelling from his window. Officer Larrain yelled to Mr. Turpin and asked if they could talk to him at Mr. Turpin's door. Mr. Turpin indicated that that would be okay. Officer Larrain then specified that the talk would be at Mr. Turpin's door. Officer Larrain again specifically indicated that he was going to knock on the door and he wanted Mr. Turpin to open it.

The officers arrived at Mr. Turpin's apartment and, indeed, Officer Larrain knocked on the door. In response, Mr. Turpin could be heard to say "come on in" as he walked toward the door. In response to the statement, Officer Larrain turned the door knob, pushed slightly and drew back from the door without making any attempt to enter the apartment. Mr. Turpin soon arrived at the door and stepped out into the hallway as they had agreed. At no time at that point did he ask the officers to come in. No noise emanated from the apartment. Officer Larrain then

began to interrogate Mr. Turpin asking repeatedly what was going on with respect to the noise and was anyone else in the apartment. Given Mr. Turpin's peculiar responses, Off. Larrain asked if he was on something.

After a while, Mr. Turpin turned and went back inside his apartment. The officers, without any consent from Mr. Turpin, followed Mr. Turpin into his apartment. Once in the apartment, the questioning of Mr. Turpin continued with questions as to what's going on. Eventually, they asked again whether anyone else was there and Mr.Turpin indicated that his lady friend, plaintiff Regina Jackson, who had been there since the previous day, was in the bedroom.

Mr. Turpin walked into the bedroom and again the officers followed, without asking permission or seeking consent from Mr. Turpin or Ms. Jackson. Once in the bedroom Officer Larrain began questioning Ms. Jackson who failed to respond to his questions. Meanwhile, Mr. Turpin asked Off. Larrain how it was that he was able to be in his apartment. Off. Larrain's response was that they were there because they got a call for service, ignoring the basis for his ability to be in his apartment.

The officers, then directed that Mr. Turpin leave the room of his own apartment so that Ms. Jackson could be questioned alone. Mr. Turpin, having no choice, left the room with Officer Chen who resumed interrogating Mr. Turpin. Officer Larrain soon discovered marijuana, other drugs and paraphernalia in the bedroom. Officer Larrain apparently believed that some of the drugs were illegal. The officers then proceeded to handcuff and arrest the Plaintiffs. They were subsequently taken to the Sixth District Police Precinct and processed. Mr. Turpin and Ms. Jackson spent the night in the Central Cellblock. The next day all of the charges were dropped and they were released.

The instant case was filed in D.C. Superior court on May 10, 2022, stating federal claims for Illegal Entry (Count I), Illegal Search and Seizure (Count II) and False Arrest.(Count III) and a common law claim for Trespass (Count IV). The case was removed to D.C. District Court on June 24, 2022. The Defendants subsequently Answered the Complaint and filed the first Motion for Judgment on the Pleadings. The Complaint was later amended to add Officer Larrain as a party defendant.

**Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings at any time "after the pleadings are closed." Fed. R. Civ. P. 12(c). Parties are entitled to pretrial judgment on the pleadings "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." Schuler v. Pricewaterhouse Coopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008), quoting Peters, 966 F.2d at 1485. When analyzing a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992), quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988), 290–91; see also Thompson v. Dist. of Columbia, 428 F.3d 283, 284 (D.C. Cir. 2005) ("As we must in reviewing a judgment on the pleadings, we view the complaint's allegations in the light most favorable to the plaintiff.").

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. A court need not accept as true legal conclusions set forth in a complaint. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

(2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C.Cir.2007). "Because a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery." Baumann v. Dist. of Columbia, 744 F.Supp.2d 216, 221 (D.D.C.2010).

If on a Rule 12(b)(6) or 12(c) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (applying the same test when converting a Rule 12(b)(6) motion to one for summary judgment). But the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

A court may grant judgment on the pleadings only if it appears beyond doubt, based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Schuchart v. La Taberna Del Alabardero, Inc., 365 F.3d at 35; Alicke v. MCI Communications Corp., 111 F.3d 909, 912 (D.C.Cir.1997).

## ARGUMENT

Resolution of the instant case clearly turns on whether or not Mr. Turpin consented to the entry of his apartment. As argued infra, clearly he did not.

4

I.    **MR. TURPIN DID NOT CONSENT TO THE OFFICERS ENTERING HIS APARTMENT**

1.    A search conducted without a warrant is "per se unreasonable" under the Fourth Amendment, subject to "a few specific and well-established exceptions." Basnueva v. United States, 874 A.2d 363, 369 (D.C. 2005). An individual's free and voluntary consent to be searched is one such exception to the warrant requirement. Burton v. United States, 657 A.2d 741, 745 (D.C. 1994); Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Under this exception, the government must show by a preponderance of the evidence that consent was freely and voluntarily given. Basnueva, 874 A.2d at 369. Whether an individual's consent is voluntary is a fact-intensive inquiry "to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041. The test "focus[es] specifically on the consenting person's characteristics and subjective understanding." Basnueva, 874 A.2d at 369; see also Schneckloth, 412 U.S. at 229, 93 S.Ct. 2041 ("[A]ccount must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.").

2.    In the instant case, Defendants essentially base their case on the simple fact that Mr. Turpin blurted out "come in" on his way to open the door to his apartment. It was not in response to a request for consent to enter the premises. In fact, the officers never requested consent or permission from Mr. Turpin to enter his apartment or the bedroom within his apartment.

3.    The instant case arose in connection with a police intervention pursuant to an alleged

noise complaint. On the late night of September 19, 2020 the Metropolitan police officers Kyle Larrain and Michael Chen responded to the apartment building of Plaintiff Charles Turpin. As the officers approached the building they could hear Mr. Turpin yelling from his window. Officer Larrain yelled to Mr. Turpin and asked if they could talk to him. Mr. Turpin agreed to do so. Importantly, officer Larrain then specified that the talk would be "at Mr. Turpin's door". Officer Larrain further indicated that he was going to knock on the door and he "wanted Mr. Turpin to open it".

4.      The officers arrived at Mr. Turpin's apartment and, indeed, officer Larrain knocked on the door. In response to the knock, Mr. Turpin could be heard to say "come in". Officer Larrain, however, made no attempt to enter Mr. Turpin's apartment. Oddly, in response to the offer to come in, officer Larrain, instead drew back as if he was concerned about what might be  behind the door. Mr. Turpin soon arrived at the door and stepped out into the hallway where they proceeded to "talk", as agreed to. The talk proceeded and concluded when Mr. Turpin turned and went back to his apartment. At this point, the question arises as to how a reasonable police officer would interpret the status of things at this point. It would not make sense to assume that the offer to "come in" in response to the initial knock at the door had some lasting effect to allow the officers to enter Mr. Turpin's apartment any time and for any purpose. To the contrary, a reasonable officer would seek consent from Mr. Turpin before following him into his apartment.

5.      Similarly, once the officers were illegally in Mr. Turpin's apartment and fully engaged in haranguing Mr. Turpin. They again asked whether anyone else was in the apartment. Mr. Turpin indicated that Plaintiff Regina Jackson was in the bedroom – clearly a place where

6

privacy concerns would be heightened. It is important to note, as indicated in the

Complaint, that Ms. Jackson had been in Mr. Turpin's apartment since the previous day,

i.e. she was an overnight guess and legally had an expectation of privacy in Mr. Turpin's

bedroom as relates to outside individuals. Minnesota v. Olson, 495 U.S. 91, 91, 110 S. Ct.

1684, 1685, 109 L. Ed. 2d 85 (1990)(status as an overnight guest is alone sufficient to

show that he had an expectation of privacy in the home that society is prepared to

recognize as reasonable); .See Rakas v. Illinois, 439 U.S. 128, 143–144, 99 S.Ct. 421,

430–431, 58 L.Ed.2d 387; cf. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4

L.Ed.2d 697. The defendant officers, however, had no problem ignoring any concerns on

the part of Ms. Jackson, as they again "followed" Mr. Turpin into his bedroom, without

seeking consent from him or Ms. Jackson. Again, a reasonable officer would not have

acted in such a privileged manner. These fundamental and illegal intrusions, without any

attempt to seek consent, cannot be ignored in any analysis of this case.

## II.    THE ACTIONS OF THE DEFENDANTS WAS CLEARLY ILLEGAL

6.    The clear illegality of the officers action in the instant case is also layed out in an article

aptly entitled "You Can't Just Walk in a House!"[2] The author states that

> Officers must also remember that if they are talking to an individual while that
> person is entering the residence, they may not enter the home. The person simply
> walking away into the home does not imply tacit consent for the officer to enter.
> The officer must seek permission before entering, which is as simple as asking

---

[2] The subtitle is "Without a Warrant, Consent, or Exigent Circumstances it is a
Constitutional Violation." Law Enforcement Action forum Newsletter, December 2011 Edition,
Volume 18, Issue 5.

"Mind if I come in?"[3]. [Emphasis added]

The defendants in the instant case, however, constantly rely on alleged inferences instead of clear factual statements of consent. The Eleventh Circuit has held that consent cannot be inferred by the simple act of disengaging from conversation with an officer and walking into the house. Bashir v. Rockdale Cnty., Ga., 445 F.3d 1323, 1329 (11th Cir. 2006).

### III.    THE U.S. v. EVANS CASE PUTS THE "COME IN" REMARK IN PERSPECTIVE

7.    The case of U.S. v. Evans, 194 F.Supp. 90 (D.D.C. 1961) must be considered when dealing with phrases such as "come in". In Evans the court states that "First, even if defendant's invitation to 'come on in' was made, it was in response only to an indication that the visit's purpose was talk — not search". Evans, at 92.  This is precisely the situation in the instant case. Officer Larrain claimed that he wanted to talk. One can talk as he also suggested "at your door" before he then indicated that he was going to knock on the door and he wanted Mr. Turpin to "open it up". Clearly, it sounds like he wanted to do more than simply talk, which Mr. Turpin agreed to. He really wants to get into the apartment.

8.    The Evans court also observes that the cases in the Court of Appeals and the Supreme Court clearly hold that

---

[3] Indeed, the author states that the following situations where officers can get in trouble because they do not meet the courts' requirements for consent or any of the exceptions to getting a warrant:

- Assuming that because the person did not object when the officer followed them into the house or
- Entering because the officer wants to continue investigating

words or acts that would show consent in some circumstances do not show it in others. 'Non-resistance to the orders or suggestions of the police is not infrequent * * *; true consent, free of fear or pressure, is not so readily to be found.' * * * <u>no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered</u>. It follows that when police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by a denial of guilt, <u>do not show consent</u>; at least in the absence of some extraordinary circumstance such as ignorance that contraband is present.

<u>Higgins v. United States</u>, 1954, 93 U.S.App.D.C. 340, 341, 209 F.2d 819, 820. See also <u>Johnson v. United States</u>, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; <u>Lee v. United States</u>, 1956, 98 U.S.App.D.C. 97, 98, 232 F.2d 354. The same applies in this case. One must ask the question as to why Mr. Turpin would willingly and knowingly consent to the search of a room when he knows that in contains visible contraband. It is clearly absurd.

## IV.    <u>ASSESSING USE OF THE REMARK "COME IN"</u>

### A.    <u>Common Sense Contextual Analysis of Mr. Turpin's Remark to "Come In"</u>

9.    Defendants' make much ado regarding the remark by Mr. Turpin to "come in" in response to the knock on his apartment door by officer Larrain. Mr. Turpin just a couple of minutes prior had communicated with Officer Larrain who indicated that <u>he wanted to talk with Mr. Turpin "at your door"</u>. Mr. Turpin agreed to talk with officer Larrain with the assumption being that said talk would, indeed, take place "at his door". Officer Larrain had also stated that when he knocked he wanted Mr. Turpin to "open it up". As a result, Mr. Turpin in an attempt to cooperate as he ran to the door simply said "come in". It should also be noted that when someone says "come in", that is a common courtesy. One does not mean for a person to come in and go throughout the premises, especially into one's bedroom. If anything, it simply means step inside the door. However,

according to the agreement that Mr. Turpin and Officer Larrain had, they agreed to speak at his door.

10.    Next, let's consider the temporal context of this remark. When someone says to someone "come in" it is meant that they come in at the time that the remark is made. It is not intended for the person to "come in" an hour later. That would not make any sense, common or otherwise. Put another way, to say "come in" does not bestow some sort of carte blanche whereby the individual to whom the remark is free to "come in" at any time they like. Yet this is exactly what Defendants are suggesting that Mr. Turpin intended when he made the off the cuff remark. Common sense and a reasonable interpretation of the context of the remark, however, would contend otherwise.

11.    Nor would the remark in the context of when it was made suggest that Mr. Turpin wanted the officers to "come in" to his apartment, when <u>officer Larrain had agreed to talk at his door</u>. It was not an invitation to come in and get comfortable. That would also be an implausible argument given the particular context in which is was stated – period. It certainly was not intended as such, nor was it in any common sense or reasonable analysis a consent for the officers to enter his apartment, at any time or manner they liked.

### B.    Legal Requirements if "Come In" is to be Construed as Legal Consent

12.    As can be seen from the foregoing, it would be more than a stretch in a commonsensical manner to construe the remark as a consent (legal or otherwise) to enter Mr. Turpin's apartment and get comfortable. However, when the Defendants attempt to argue that the off the cuff remark reaches the status of a legal consent, it gets much more complicated.

13.    It is well-settled that a search conducted without a warrant issued upon probable cause is

per se unreasonable and, absent an exception, violates the Fourth Amendment. One of the specifically established exceptions to both the warrant and probable cause requirements is a search conducted pursuant to consent. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); <u>Jackson v. United States</u>, 404 A.2d 911, 920 (D.C.1979). In order to justify a search on the basis of consent, the consent must be voluntary, such voluntariness to be determined by the <u>totality of the surrounding circumstances</u> including the characteristics of the consenting individual and the details which gave rise to the consent. <u>Schneckloth v. Bustamonte</u>, supra, 412 U.S. at 229, 93 S.Ct. at 2048. Relevant factors in making this determination include, inter alia, the age of the person, his or her education and the individual's mental status[4] and whether he or she was told of the right to refuse to consent. <u>The government must show a consent that is 'unequivocal and specific.'</u> " <u>Judd v. United States</u>, 89 U.S.App.D.C. 64, 66, 190 F.2d 649, 651 (1951) (citations omitted).

**V.    THERE IS CLEAR DISPOSITIVE EVIDENCE THAT MR. TURPIN DID NOT CONSENT TO THE ENTRY OF THE POLICE INTO HIS APARTMENT**

14.    The Defendants entire argument is based on the fallacy that Mr. Turpin consented to the Defendant officers entry into his apartment. As shown below, this issue was actually addressed directly by Mr. Turpin in a colloquy with Officer Larrain[5].

**A.    The Turpin-Larrain Colloquay**

15.    As indicated in the Defendants' statement of facts regarding how things unfolded after the

---

[4] Officer Larrain had previously asked Mr. Turpin is he was on something.

[5] This issue was referenced in the Amended Complaint at p. 14, note 2.

entry into Mr. Turpin's apartment, the officers entered Mr. Turpin's bedroom[6]. Once inside the bedroom, Officer Larrain proceeded to interrogate Ms. Jackson. Early on in this process, the following colloquy took place.

**MR. TURPIN:**      How is it that you are able to be in my house and you understand what I'm saying?

**OFF. LARRAIN:**      We're here because we got a call for service.

**MR. TURPIN:**      I didn't call you.

**OFF. LARRAIN:**      Okay, I understand that.

Body Worn Camera footage at (2020-09-18) 05:40:22 - 05:40:44.

16.      Indeed, this simple colloquy it refutes everything that the Defendants assert regarding consent to enter Mr. Turpin's apartment – period. Simply put, if, as the Defendants argue that Mr. Turpin consented for the officers to be "in my house", why would he be asking, how is it that they are able to be in his house. It would make no sense, and be totally implausible, for Mr. Turpin to consented to the officers to enter his house (i.e. his apartment) and at the same time be asking how it is that they are "able" to be in his house. This is clearly another way of asking, on <u>what legal authority</u> (e.g. search warrant) or basis do you officers have for entering (i.e. being in) his house. It is telling that <u>Officer Larrain did not say, you consented for us to be in your house</u>. He did not say that because Mr. Turpin did not give consent to enter his house and would have said as much if Officer Larrain stated that he gave consent. Again, case trespassed.

---

[6] The entry by the Defendant officers into Mr. Turpin's bedroom was also done without any consent or permission of Mr. Turpin or Ms. Jackson. Arguably, there was a reasonable expectation of privacy for one's bedroom which was disrespected by the Defendants.

17.    Officer Larrain's response that they were there because they got a call for service is
further telling because a reasonable officer would know that a simple call for service from
a neighbor is not a basis for entering some one's house. A rookie officer would know
that. Certainly Officer Larrain Officer Chen[7] knew that. Put another way, <u>Officer Larrain
and Officer Chen knew that they did not have a legal basis or any authority to be in Mr.
Turpin's house/apartment</u>. That is the only plausible conclusion that can be drawn in this
case, given the clear unequivocal facts. They cannot say that they were confused or they
thought they had consent. That argument clearly fails – given the undisputed facts.

**B.    <u>Legal Consequences of the Turpin-Larrain Colloquy</u>**

18.    A further undisputed reality is that the subject colloquy came before Officer Larrain
allegedly saw the drugs in plain sight. Taking away any legal basis for the arrest and
charges against the plaintiffs. It also takes away any argument that the Defendants had for
Plaintiff's trespass claim in Count IV of the Amended Complaint. Lastly, Defendants'
argument for qualified immunity also fails.

**VI.    <u>THERE IS NO BASIS FOR A COMMUNITY CARETAKING CASE</u>**

19.    On so many levels, Defendants argument regarding the "community caretaking doctrine"
is totally without legal merit. Neither D.C. Circuit Court nor the D.C. Court of Appeals
has held that the community caretaking exception applies to a home. <u>Corrigan v. D.C.</u>,
841 F.3d 1022, 1034 (D.C. Cir.2016); <u>United States v. Proctor</u>, 489 F.3d 1348, 1353
(D.C. Cir.2007); <u>Hawkins v. United States</u>, 113 A.3d 216, 222 (D.C. 2015). Indeed, there

---

[7] Officer Chen was in the bedroom and was able to hear the colloquy between Mr. Turpin
and Officer Larrain.

13

is a reason why Defendants do not cite to any District of Columbia case supporting their argument. Defendants, without citation, states that "[t]his function permits a police officer t enter a dwelling without a warrant if it is reasonably believed that a person inside is in need of medical assistance".Motion, p.8. Defendants go further and proclaim that "the officers' entry into the Turpin apartment and bedroom is protected by the community caretaking doctrine." Motion, p. 9. However, in Caniglia v. Strom, 209 L. Ed. 2d 604, 141 S. Ct. 1596, 1598 (2021) the Supreme Court has stated emphatically that police officers' community caretaking duties do not justify warrantless searches and seizures in the home.

20.    As further evidence that the "community caretaking" argument was just an afterthought consider that there was no mention of any "community caretaking" in the police report. Nor was there any mention of "community caretaking" in Defendants Answer to the Complaint. Lastly, if the case involved any type of "welfare check" they would have had to comply with MPD General Order OPS-304-02 (Welfare Checks) which required filing of relevant incident reports. Apparently no such reports have been filed.

## VII.    THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

21.    Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "[T]he right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized' sense so that the

14

'contours' of the right are clear to a reasonable official." Reichle v. Howards, 566 U.S.

658, 665, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (first quoting Brosseau v. Haugen, 543

U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam), then quoting

Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

22.     To be sufficiently clearly established, a right need not rest on controlling authority

directly on point, "but existing precedent must have placed the statutory or constitutional

question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179

L.Ed.2d 1149 (2011). Qualified immunity may be unavailable when plaintiffs identify

"cases of controlling authority in their jurisdiction at the time of the incident" or "a

consensus of cases of persuasive authority such that a reasonable officer could not have

believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct.

1692, 143 L.Ed.2d 818 (1999).

### A.     A Reasonable Officer Could Not have Believed that his Actions Were Lawful

23.     As a threshold matter, validity of a consent to search is a factual question to be

determined from a careful examination of the unique facts and circumstances of each

case. Castellon v. U.S., 864 A.2d 141 (D.C. 2004). To the extent that a reasonable officer

could have believed that his actions were lawful, he is not entitled to qualified immunity.

Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). As a

general proposition consideration of unique facts in this case, it is clear that there is no

basis or grounds to believe that the claim of consent made as outlined, supra, is valid.

Additional proof is provided below.

24.     The case law regarding a valid consent provides that "[t]he government must show a

consent that is 'unequivocal and specific.' " <u>Judd v. United States</u>, 89 U.S.App.D.C. 64, 66, 190 F.2d 649, 651 (1951) (citations omitted). The claim of a valid consent made in the instant case was anything but "unequivocal and specific". <u>The Defendants, who never asked Mr.Turpin to enter his apartment or bedroom</u>, could not have believed that the statement "come in" yelled by Mr. Turpin as he ran to open the door to talk "at his door" was a carte blanche right to enter Mr. Turpin's apartment anytime they wanted. Yet, there is another important element to the manner in which the officers simply believed that it was okay to do so.

25.    The case law also takes into consideration the person's mental state during the time that an alleged consent was given. In the instant case a critical factor is Mr. Turpin's alleged consent is his "mental condition". Indeed, the Defendants admit that there were concerns. Upon first contact with Mr. Turpin, he was yelling out the window "laughing and talking as the officers approached the building". Motion, p. 3. Defendants next note that officer Larrain "again asked Turpin <u>whether he was on something</u>". Motion, p. 9. Defendants finally note concern about "<u>the behavior of both Turpin and Jackson</u>". Clearly, <u>it appeared to the Defendant officers that Mr. Turpin's mental condition was impaired</u>, bringing into question his ability to even provide a valid consent. To the contrary, it was a prime environment for the officers to take full advantage of the situation – such as illegally following Mr. Turpin into his apartment. Indeed, if they believed that their behavior was proper and legal all they had to do was be open and get verification from Mr. Turpin, which they never did.

## VIII.  THE SEARCH AND ARREST OF THE PLAINTIFFS VIOLATED THE FOURTH AMENDMENT

26.  The Fourth Amendment is implicated as soon as the police enter someone's home. See 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.3(b) (2004) ("It is beyond question, therefore, that an unconsented police entry into a residential unit, be it a house or an apartment or a hotel or motel room, constitutes a search within the meaning of Katz v. United States [389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)]."); see also Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)("[T]he Fourth Amendment has drawn a firm line at the entrance to the house."); Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (characterizing "entry to defendant's living quarters" as "the beginning of the search").

27.  The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).6 An individual has a clear expectation of privacy in the home. Indeed, " '[i]t is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " Oliver v. United States, 656 A.2d 1159, 1164 (D.C.1995) (quoting Welsh v. Wisconsin, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)).

28.  The search and subsequent arrest of the Plaintiffs pursuant to a warrantless entry without exigent circumstances violated the Fourth Amendment. Kirk v. Louisiana, 536 U.S. 635, 638.

## IX.   <u>THE ILLEGAL ENTRY INTO THE PLAINTIFF'S HOME WAS A TRESPASS</u>

29.    The D.C. Circuit has held that "[t]he tort of trespass in the District of Columbia is the intentional intrusion of a person or thing upon property that invades and disrupts the owner's exclusive possession of that property." <u>Morgan v. Barry</u>, 12 Fed.Appx. 1, 3(D.C.Cir.2000). More specifically, it is "simply an unauthorized entry by one person upon the land of another." Id.

30.    The Court in <u>Garay v. Liriano</u>, 943 F. Supp. 2d 1, 25 (D.D.C. 2013) cite the following: Where police officers lawfully enter a house, the entry will not constitute a trespass. See, e.g., <u>Trull v. Smolka</u>, 411 Fed.Appx. 651, 657 (4th Cir.2011) ("if the entry on the property was authorized by law, then the claim for trespass cannot be successful"); <u>Tensley v. City of Spokane</u>, 267 Fed.Appx. 558, 560 (9th Cir.2008) (plaintiff's trespass action failed where officers entered his property pursuant to valid search warrant); <u>Hicks v. City of Buffalo</u>, 124 Fed.Appx. 20, 25 (2d Cir.2004) (where warrantless search of premises was justified by exigent circumstances, defendants entitled to summary judgment on plaintiff's trespass claim).

31.    The <u>Liriano</u>, however state that this protection, however, does not extend to unlawful entries: "Law enforcement officers who enter premises without authority are subject to common law trespass actions." <u>Turner v. Sheriff of Marion Cnty.</u>, 94 F.Supp.2d 966, 984 (S.D.Ind.2000); see also <u>Levine v. City of Bothell</u>, 904 F.Supp.2d 1124, 1132–33 (W.D.Wash.2012) (plaintiff's trespass claims against law-enforcement officers survived summary judgment where question existed as to whether officers had entered under a valid search warrant); <u>Kerns v. Bd. of Comm'rs of Bernalillo Cnty.</u>, 888 F.Supp.2d 1176,

1240 (D.N.M.2012) (denying qualified immunity for trespass claims where there was evidence that officers entered plaintiff's home without a warrant and without an exception to warrant requirement); Cole v. City of Sunnyvale, No. 08–5017, 2011 WL 4346510, at *10 (N.D.Cal. Sept. 14, 2011) (plaintiffs' trespass claim could proceed where officers entered residence without a warrant to search for weapons, and search was not justified under any exception to warrant requirement); Arbuckle v. City of Chattanooga, 696 F.Supp.2d 907, 931 (E.D.Tenn.2010) (plaintiff's trespass claim survives summary judgment where question existed as to lawfulness of officers' entry into her home); Powell v. Nunley, 682 F.Supp.2d 1260, 1272–73 (W.D.Okla.2010) (denying officers' motion for summary judgment on trespass claim where officers had a warrant, but entered wrong house); Modrell v. Hayden, 636 F.Supp.2d 545, 561 (W.D.Ky.2009) (where exigent circumstances did not exist to justify defendant's entry into plaintiff's residence, his claim of trespass could proceed). Accordingly, the defendant  officers in the instant case clearly are culpable.

Respectfully submitted by,

/s/ John F. Pressley, Jr.

_____

John F. Pressley, Jr. #379716
7600 Georgia Avenue, N.W., Suite 206
Washington, D.C. 20012
(202) 723-8800
jfpressley@verizon.net
Attorney for Plaintiffs