UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES TURPIN, *et al.*,

    *Plaintiffs,*

v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants.*

22-cv-1807 (TJK)

**DEFENDANTS' REPLY**

Defendants Officer Michael Chen and the District of Columbia (the District) submit this reply to Plaintiffs Charles Turpin and Regina Jackson's opposition to their motion for judgment on the pleadings.

**INTRODUCTION**

As the plaintiffs concede, the events of September 19, 2020 arose when Officer Chen (and his partner) responded to the Turpin apartment based on a noise complaint; the officers could hear Mr. Turpin *yelling* from outside as they approached the Turpin apartment. Though Mr. Turpin's behavior and actions fit perfectly with his comment "come in, come in" to Officer Chen, the plaintiffs want the Court to disregard those actions. The Court should decline to do so. As this record shows, Officer Chen is entitled to qualified immunity for all the actions he took arising from his interaction with the plaintiffs that evening. And judgment on Turpin's common law trespass claim in favor of the defendants is also warranted.

**ARGUMENT**

I. **The Court Need Not Consider Matters Outside the Pleadings.**

The plaintiffs recognize that a motion for judgment on the pleadings may only be treated as one for summary judgment, *if* "matters *outside* the pleadings are presented to and not excluded by the court . . . ." *See* Pls.' Opp'n. at 4, emphasis added, *citing* Fed. R. Civ. P. 12(d); *Marshall Cnty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C. Cir. 1993). However, this Court need not treat the defendants' motion for judgment on the pleadings like a motion for summary judgment because it need not consider any matters outside the pleadings. As each party's pleadings show, they not only reference the body-worn camera (BWC) footage and police report in their pleadings, they incorporate these documents in their filings. *See* Pls.' Compl. ¶¶ 7, 16 n.2 [35]; Defs.' Answer ¶ 7 [39]. The *Marshall* court *did not* convert the defendants' motion to dismiss under Rule 12(b)(6) to a motion for summary judgment and did not allow for discovery in that case. *Marshall*, 988 F.2d at 1226. *See also* Pls.' Opp'n. at 4, *citing Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.") This Court must reject the plaintiffs' argument that under *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "a court may grant judgment on the pleadings only if it appears beyond doubt, based on the allegations contained in the complaint, that 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" In 2007, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), overturned the *Conley* decision. And under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 545. And while courts consistently hold that the facts asserted in the

complaint are *generally* to be viewed in a light most favorable to the nonmoving party, when there is BWC footage, the content of which has not been contested by the plaintiff, courts "view the facts in the light depicted by the videotape." *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (directing courts to "view the facts in the light depicted by the videotape"). Here, the plaintiffs have not argued that the BWC footage was doctored or otherwise altered. *See* Pls.' Opp'n. Rather, they have embraced the facts. *See* Pls.' Am. Compl. ¶ 16 n.2 ("The Statement of Facts is based in part on body worn camera (BWC) footage provided by defendants".) Nor have they argued that discovery is needed here for the Court to rule on Officer Chen's entitlement to qualified immunity or the other arguments raised by these defendants because, more likely than not, they don't believe discovery is needed for this Court to decide the defendants' dispositive motion. *See* Pls.' Opp'n. Officer Chen's entitlement to qualified immunity is a question of law, which is now ripe for decision by this Court. "Qualified immunity is "a question of law, *not one of legal facts*." *Corrigan v. District of Columbia,* 841 F.3d 1022, 1041 (D.C. Cir. 2016), *citing Elder v. Holloway*, 510 U.S. 510, 516 (1994) (emphasis added).

**II.     The BWC Footage Supports Officer Chen's Qualified Immunity Defense.**

The plaintiffs make no effort to discuss the recent court opinions on qualified immunity; *Tahlequah v. Bond*, 142 S.Ct. 9 (2021); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021); or *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). *See* Pls.' Opp'n. Each case makes clear that qualified immunity is appropriate unless the law was clearly established that the officer's conduct was unlawful. Here, plaintiffs cannot succeed on their claim unless the plaintiffs show that the law was clear that Officer Chen's entry into the Turpin apartment was unlawful as was the arrest he made and the search he conducted *and* that Officer Chen is plainly incompetent or otherwise knowingly violated the law. *See District of Columbia v. Wesby,* 138 S.

3

Ct. 577, 589 (2018) (*quoting White v. Pauly,* 137 S. Ct. 548, 551 (2017)). The plaintiffs have not met this burden of proof.

Rather than make the requisite showing, the plaintiffs rely on cases that are easily distinguished from the facts here and that do not undercut Officer Chen's entitlement to qualified immunity for the entry, search, or arrest he made. *Id.* Officer Chen's BWC footage is dispositive of what actions *he* undertook; he cannot be held liable under 42 U.S.C. § 1983 for the actions of others. *See* 12/06/2022 Officer Chen Body-Worn Camera Footage [20-5], Defs.' Mot. Ex. C. *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."); *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) ("When more than one officer is involved, the court must consider each officer's entitlement to qualified immunity separately.") Here, while the plaintiffs recognize there are several exceptions to the warrant requirement for a search, they assert that Turpin gave no consent to the officers' entry, that the officers' actions were clearly illegal, the community caretaking doctrine is inapplicable, and the search and arrest of the plaintiffs violated the Fourth Amendment. Each of these arguments fail.

### A. **Officer Chen Had Voluntary Consent to Enter the Apartment and Bedroom**.

While the plaintiffs make every attempt to undercut Turpin's voluntary invitation to the police to enter his home, asserting that he "blurted" out the words "come in, come in," the BWC footage clearly shows that the invitation was voluntarily extended—how it was extended, and how many times it was extended—not once but several times. *See* Officer Kyle Larrain Body-Worn Camera Footage [20-4], 12/06/2022 Defs.' Mot., Ex. B, at 5:36:29-5:36:36 ("Come in, come in") (filed under seal). And although Turpin stepped out into the hallway when the officers

4

did not immediately enter, he never withdrew his consent for them to "come in." *Id. See also Burton v. United States*, 657 A.2d 741 (D.C. 1994), cited by the plaintiffs. Pls.' Opp'n. at 5. The *Burton* court addressed the question "whether consent to search, once given, can be withdrawn by an act or comment that falls short of an unequivocal expression of withdrawal of consent," and decided it could not. *Id*. 657 A.2d. at 742, 749. Here, it is unequivocal that Turpin invited Officer Chen into the Turpin apartment and did not unequivocally withdraw his consent to his entry. Ofc. Chen BWC, at 5:36:29-5:36:36.

The plaintiffs' arguments that the Court should disregard Turpin's consent to enter his apartment is unavailing. This is not a situation—as they suggest—where hours or even an hour passed before Officer Chen entered the Turpin apartment at Turpin's invitation. *See* Pls.' Opp'n. at 2 ("After a while. . . .") and 10 ("[I]t is not intended for the person to 'come in' an hour later."). Instead, *less than one minute* passed between the time Turpin extended his consent to enter and the time Officer Chen followed him inside. *See* Ofc. Larrain BWC, at 5:36:29-5:37:24. And actions (sometimes) speak just as loud—if not louder—than words; especially here given Turpin's extended invitation to enter the Turpin apartment. When Turpin was asked whether he was alone in the apartment, Turpin immediately walked towards and then inside the bedroom and introduced Jackson. *Id.* at 5:37:33–5:37:48 ("[Y]ea, my baby, right there; you see her, she's right there.") This behavior evinces no disproval of Officer Chen's presence within the Turpin apartment, and it certainly did not unequivocally revoke Turpin's consent to Officer Chen's entry or his continued presence in the Turpin apartment. *See also Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (Voluntariness of a search is to be determined by the totality of the surrounding circumstances; the government need not prove that the defendant knew he could withhold consent; "the Fourth Amendment protection against unreasonable searches and seizures does not

require a knowing and intelligent waiver of constitutional rights"). Officer Chen did not, as plaintiffs suggest, *infer* consent and follow Turpin into the apartment. Pls.' Opp'n. at 7. He had "clear factual statements of consent"—Turpin's words "come in, come in." *Contra*, Pls.' Opp'n at 8. Indeed, the plaintiffs' arguments to the contrary regarding the meaning of the phrase "come in" strain credulity, lack legal foundation, and undercut their own argument. *See* Pls.' Opp'n. at 9 ("when someone says 'come in', that is a common courtesy.") According to the plaintiffs, "it simply means step inside the door." *Id.* Okay, so if it only means "step *inside* the door," Officer Chen did just that. He stepped inside the door of the Turpin apartment. It was Turpin who asked whether Officer Chen saw Jackson who was inside the bedroom and directed him to that area. Ofc. Larrain BWC, at 5:37:33–5:37:48. Rather than say, "come in, come in," words expressing an asserted common courtesy, Turpin could have said "wait a moment, I'm coming outside to speak with you." It is not a simple courtesy to tell someone to come inside your home if you don't want them there. And contrary to the plaintiffs' argument or suggestion, no "coercive" questions or statements were made by Officer Chen, nor were any made to Turpin. *See* Pls.' Opp'n. at 5, citing *Schneckloth*, 412 U.S. at 229 ("[A]ccount must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents."). Moreover, if Turpin objected to Officer Chen's entry after he had extended the invitation, rather than point to Jackson who was in the bedroom, he could have told Officer Chen to leave or otherwise protest his entry but did not. Instead, Turpin's actions over the course of his exchange with Officer Chen spoke volumes: that he consented to Officer Chen's presence in the Turpin apartment. And it matters not that he forgot drugs were in plain sight in his bedroom or did not believe they would be seen by Officer Chen; he extended the invitation to come into the Turpin apartment and identified Jackson to Officer Chen as she sat in the bed in the bedroom.

Importantly, Jackson was not dressed inappropriately or lying in the bed or otherwise hiding to make clear that Officer Chen's presence was troubling. Indeed, Turpin was proud to introduce his "baby" to Officer Chen. Ofc. Larrain BWC, at 5:37:33–5:37:48 ("[Y]ea, my baby, right there; you see her, she's right there.")

Under the totality of circumstances as depicted by the BWC footage, no reasonable juror could find that Officer Chen coerced or otherwise forced the initial entry into the apartment or that Turpin did not consent for him to enter the Turpin apartment or to enter the bedroom. Rather, Turpin's consent was unprompted and voluntarily given. *See Schneckloth*, 412 U.S. at 248. In fact, nothing about Turpin's behavior showed he did not consent for Officer Chen to enter the Turpin apartment, including the bedroom. And there is no showing that Turpin revoked his consent nor any evidence that Jackson objected to Officer Chen's presence. And because Jackson did not own the Turpin apartment, her rights were not greater than Turpin's rights; she could not undercut Turpin's invitation to Officer Chen's entry because she was merely a guest. And even if her rights were the same as Turpin's rights, there is no showing she expressed any concern about Officer Chen's presence. *See* Ofc. Chen's BWC.

Because the BWC footage shows that Officer Chen's entry into the Turpin apartment was not to search for drugs or to make an arrest, his conduct was lawful. *Id.* As admitted by the plaintiffs, Officer Chen heard Turpin "yelling" from his window as they approached the Turpin apartment. Pls.' Opp'n. at 6. And as reflected by the BWC footage, the entry into the apartment was to investigate the noise complaint that was received—and heard—and to see if everyone inside was okay given the reports that it sounded like a fight inside the apartment. Ofc. Larrain BWC, at 5:36:59-5:37:42. ("Are you by yourself in there? . . . Is it just you in there? . . . Is everything okay? . . . Is it just you? . . . Nobody else is in here?"). Moreover, when Turpin led

Officer Chen to Jackson, who was sitting in the bedroom, Officer Chen asked her, "are you okay, do you need the ambulance or anything?" Ofc. Chen BWC, at 5:38:00-5:38:04. Because nothing done by Officer Chen was coercive or otherwise unlawful, he is entitled to qualified immunity for his conduct.

The plaintiffs place much undue emphasis on the "Turpin-Larrian Colloquay," as plaintiffs call it. *See* Pls.' Opp'n. at 11-12. They make note that Turpin asked—after the drugs were seen in plain sight—"[h]ow is it that you are able to be in my house and you understand what I'm saying?" *Id.* And when told the police received a call for service, Turpin stated, "I did not call you." *Id.* But not once did Turpin say, I did not invite you into my house, nor did he say I did not mean to do so; please leave. *Id.* As the BWC footage shows, Turpin did not call the police; his neighbors did. The neighbors called the police because they were concerned because they heard what sounded like fighting coming from the apartment. These facts support Officer Chen's ability to rely on the community caretaking function. *See* Ofc. Chen BWC, at 5:40:36-5:40:52.

   **B.**   **<u>Officer Chen Did Not Violate the Plaintiffs' Clearly Established Rights.</u>**

The plaintiffs' reliance on *Evans* in support of their argument that Officer Chen's entry into the Turpin apartment was unlawful is misplaced—neither the facts nor law in *Evans* establish that Officer Chen "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *See Tahlequah*, 142 S. Ct. 9 at 11. *See also* Pls.' Opp'n. at 8 (*citing United States v. Evans*, 194 F.Supp. 90, 92 (D.D.C. 1961)). In *Evans*, the police went to the defendant's residence *to search* for stolen items but possessed no warrants to arrest or to search. *Evans*, 194 F.Supp. at 91. The defendant moved to suppress the evidence found during the search. *Id*. at 90. The record in *Evans* showed the existence of a dispute as to

8

what was said by the police to prompt the defendant to open the door for them. *Id*. at 91. And whether, in response to the officers' questions, the defendant told the officers to "come in" or "come back this way" was also disputed. *Id*. In deciding the case, the *Evans* court reasoned that "even if defendant's invitation to 'come on in' was made, it was in response only to an indication that the visit's purpose was to talk — not search." *Id.* at 92. But as explained by the *Evans* court, it "should not be understood as holding that the police may never go to a home and ask to speak with a suspect about rumors of his involvement in a crime; the holding here condemns only their going with the *intention* of making a search." *Id*. at 93, emphasis added. Here, unlike in *Evans,* there is no dispute as to what was said or done by Officer Chen to enter the Turpin apartment. Unlike in *Evans,* where no BWC existed to resolve the alleged dispute, here, as depicted by the BWC footage, no coercive measures were used. Ofc. Chen BWC, at 5:36:30-5:37:30. And the purpose of Officer Chen's visit to the Turpin apartment—as shown by the BWC footage—was not to undertake a search of the premises for unlawful drugs or to make an arrest. *Id.*

In *Basnueva v. United States*, 874 A.2d 363 (D.C. 2005), another case relied on by the plaintiffs, the defendant disputed that he consented to a search of his person; he asserted the officer just began to search him, yet he raised no opposition to the search. *Id.* at 366. Drugs were found and he moved to suppress that evidence. *Id.* The trial court denied the motion to suppress finding that the defendant consented to the search and "the circumstances of consent was 'not coercive at all.'" *Id*. In reviewing the government's evidence, the Court of Appeals made reference to the fact that even after consent was given for the search, "[a]t no time did appellant ever ask the officer to stop the search, even after his pants were pulled back and shaken in order to dislodge the cocaine." *Id.* Conversely, the appellant testified he provided no consent

9

to the search but admitted "he never raised any protest even though he knew that an officer needed 'consent to search.' He also acknowledged that none of the officers made any threats to him at any time." *Id.* at 367. In affirming the trial court's ruling, the Court of Appeals determined that the search was consensual and there was "nothing in the record to suggest that coercion, fear, or intimidation was used to obtain appellant's consent to the search." *Id.* at 370. As the court explained, "'[w]hether the suspect acts in his own best interest is not relevant to the determination of voluntary consent,' and consent 'may be freely given' despite an officer's failure to advise the suspect of his right to withhold consent." *Id.* at 370 n.16, citing *Oliver v. United States,* 618 A.2d 705, 709 (D.C. 1993). Similarly, here, there is nothing in the BWC footage showing that entry into the Turpin apartment was based on coercion, fear, or intimidation. Ofc. Chen BWC, at 5:36:30-5:37:30. Rather, Officer Chen's entry into the apartment and bedroom was by consent. *Id.* at 5:36:30-5:38:01. And even if he did not act in his own best interest, it does not negate his voluntary consent to Officer Chen's entry into the Turpin apartment and the bedroom.

*Bashir v. Rockdale County*, 445 F.3d 1323 (11th Cir. 2006), also is not enough to deprive Officer Chen of his entitlement to qualified immunity. *See* Pls.' Opp'n. at 8. Unlike the facts here, where Turpin told the police to come inside the apartment, the police in *Bashir* were never invited inside the home. Rather, when Mrs. Bashir was told she was under arrest, she ran inside the home, and they followed her intending to arrest her; they placed her under arrest. *Id.* at 1325. And when Mr. Bashir, her husband, arrived home, and saw his younger son crying in the carport, he picked him up, and took him inside the home to comfort him. *Id.* at 1326. Mr. Bashir was followed inside the house and arrested. *Id.* The Bashir family sued, alleging false arrest and excessive force in violation of the Fourth Amendment. The trial court granted qualified

immunity to the deputies. *Id*. at 1326. The appellate court reversed, finding that "the prohibition on warrantless in-home arrests does not apply to situations where voluntary consent to enter has been obtained," but the deputies had no consent to enter the Bashir home, no warrant existed to enter the home, and exigent circumstances did not exist. *Id.* at 1328, 1331. Thus, because the *Bashir* case makes clear that warrantless arrests are not prohibited when voluntary consent has been obtained, it supports the grant of qualified immunity to Officer Chen; it does not undercut his entitlement to qualified immunity. Unlike in *Bashir* where the plaintiffs never invited the police inside their home, Turpin told the officers to come into the Turpin apartment. *Id*. at 1329. *See also United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996) (defendant refused officer's permission to enter and search her home but the officer followed her inside her home anyway). *Cf. United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002) (Consent could be implied from the defendant's body language, when in response to the officers' requests for admittance, the defendant "yield[ed] the right-of-way" to the officers.) Here, not only did Turpin's body language, as depicted on the BWC footage, *further* support Officer Chen's lawful entry into the Turpin apartment, but his words "come in, come in" provided Officer Chen with consent to enter. *See* Ofc. Chen BWC, at 5:36:30-5:38.01.

The remaining cases the plaintiffs rely upon, *Higgins v. United States*, 209 F.2d 819 (1954), *Johnson v. United States*, 333 U.S. 10 (1948), and *Lee v. United States*, 232 F.2d 354 (1956), also do not support denying Officer Chen qualified immunity. In *Higgins*, after the search of his home, the defendant was convicted of unlawful possession of drugs that were found in a paper bag in a chest of drawers, and cigarettes in a pocket hanging in a closet. *Higgins*, 209 F.2d at 819. The parties disputed whether consent to the *search* was granted. While the police asserted the defendant consented, the defendant testified that he was arrested in the street, was

taken to his room, and a search occurred without the police asking or receiving permission for the search. *Id.* at 820. The court reasoned that the asserted consent to search was not voluntary and found that the motion to suppress evidence should have been granted. Here, unlike the officers in *Higgins*, Officer Chen did not attempt to gain entry in the Turpin apartment to conduct a search for drugs or to arrest the plaintiffs. And given the contents of the BWC footage, there is no dispute about the consent given by Turpin to enter the Turpin apartment; it was not based on a show of authority.

In *Johnson,* the police received a tip from an informant that persons were smoking opium at a hotel. *Johnson*, 333 U.S. at 12. The officers went to the hotel, smelled burning opium outside the room, knocked on the door, heard fumbling inside the room, and when the door was opened entered at the acquiesence of the occupant after being told they wanted to speak to her about the smell. *Id*. Once inside, the officers arrested the plaintiff and proceeded to search the room. *See id.* This is not what happened in this case. And in *Lee*, the police seized guns after they entered the defendant's home without a warrant and with "compulson of authority" arrested him. *Lee*, 232 F.2d at 355. Evidence revealed that "the officers intended by the entry and search to secure evidence upon which to predicate the subsequent arrest." *Id*. at 355. Because none of the cases identified above by the plaintiffs put Officer Chen on notice that his conduct was unlawful, the Court should grant him qualified immunity.

      C.      **The Community Caretaking Doctrine Applies.**

The plaintiffs reliance on *Corrigan v. District of Columbia*, 841 F.3d 1022, 1034 (D.C. Cir. 2016), *United States v. Proctor*, 489 F.3d 1348, 1354 (D.C. Cir. 2007), and *Canaglia v. Strom,* 141 S.Ct. 1596 (2021), is misplaced. So is the plaintiffs' argument about why the defendants chose not to raise either the *Corrigan* or *Proctor* decisions. Pls.' Opp'n. at 13-14.

The facts in *Corrigan* and *Proctor* are inapposite to the facts here. In *Corrigan,* the search of the appellant's apartment occurred after he was in police custody and was already outside the apartment. *Corrigan,* 841 F.3d at 1025. While the trial court ruled that the community caretaking doctrine was applicable, on appeal, given the facts, the trial court's decision was vacated. Moreover, as the *Corrigan* court stated, "[t]he instant case does not require the court to decide whether the community caretaking doctrine applies to a home because even assuming it may, the officers point to no authority as would justify the EOD search." *Id.* at 1034. Indeed, the *Corrigan* court's decision was based on its conclusion that "[t]he MPD broke in Corrigan's home a second time looking for unspecified 'hazardous materials' on the basis of speculative hunches drawn from the ex-girlfriend's statement about unidentified 'military items' in a duffel bag." *Id.* at 1037. Those facts are not present here.

The *Proctor* case involved a traffic stop and search of an automobile. The appellant was placed under arrest and a search of the trunk of his car was performed. In deciding that the appellant's motion to suppress the evidence found during the search should have been granted, the court stated "[w]e believe that if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment" *Proctor*, 489 F.3d 1354. But the officers in failed to follow the procedure and thus the impoundment decision as well as the search violated the appellant's constitutional rights. *Id.* at 1355.

And as explained by the defendants, while the Supreme Court's decision in *Canaglia* vacated the community caretaking exception to entry into a home without a warrant, that decision was not made until *after* Officer Chen's September 19, 2020 entry into the Turpin home. Defs.' Mot. at 19. Thus, it was not clearly established on that day that Officer Chen's actions were no longer supported by the community caretaking doctrine. Moreover, as made

clear by the *Canaglia* court, "[t]o be sure, the Fourth Amendment does not prohibit all unwelcome intrusions 'on private property,' *ibid.*—only 'unreasonable' ones." *Canaglia*, 141 S.Ct. at 1599. To be sure, neither Officer Chen's entry into the Turpin apartment or bedroom was unreasonable given the facts and circumstances giving rise to his entry into the premises. And the holding in *Brigham City v. Stuart*, 547 U.S. 398 (2006), that a peace officer does not need a warrant to enter a home in situations where there is a "need to assist persons who are seriously injured or threatened with such injury" was clearly established as of September 19, 2020.

        D.      **Officer Chen's Search and Arrest Was Not Unlawful.**

The Fourth Amendment does not preclude all searches; it only precludes *unreasonable* searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979), *citing Carroll v. United States*, 267 U.S. 132, 147 (1925) (The Fourth Amendment prohibits only unreasonable searches). And "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. Moreover, "[t]he Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view, even though the discovery of the evidence was not inadvertent." *See Horton v. California*, 496 U.S. 128 (1990). As Officer Chen's BWC footage shows, the seizure of the drugs that were in plain view was lawful as was any search performed by Officer Chen pursuant to the plaintiffs' lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.") It matters not that the prosecution decided not to go forward with criminal charges. Rather, because there was probable cause for the plaintiffs' arrest, any search incident to arrest performed by Officer Chen was lawful. No reasonable

officer in Officer Chen's position would have believed that his conduct was unlawful. Thus, Officer Chen is entitled to qualified immunity for the search and arrest of the plaintiffs.

### III. Turpin's Trespass Claim Fails.

Turpin has not met his burden of proof to prevail on this claim. Indeed, he agrees the elements of a trespass claim consist of three elements: 1) an unauthorized entry; 2) onto the property; 3) that interferes with the plaintiff's possessory interest. *Compare* Pls.' Opp'n. at 18 with Defs.' Mot. at 19. But, irrespective of Turpin's "come in, come in" invitation for the officers to enter his apartment, Turpin characterizes Officer's Chen's entry into his apartment as illegal. And he argues the officers entered the Turpin apartment in a "privileged manner." Pls.' Opp'n. at 7. Contrary to the plaintiffs' argument, Officer Chen did not enter the Turpin apartment in a "privileged manner." Because Turpin has not shown that Officer Chen's entry into the Turpin apartment was unlawful—that he lacked a privilege for his entry—nor shown that Officer Chen's entry interfered with his possessory interest, this claim fails against both Officer Chen and the District under a theory of *respondeat superior* liability.

Further, Turpin makes no effort to counter the District's argument that he cannot recover punitive damages against the District. *See generally*, Pls.' Opp'n. Thus, this argument is conceded. *See Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 109 (D.D.C. 2020) ("[A] a court may treat those arguments that the plaintiff failed to address as conceded."). And Turpin's reliance on *Liriano* is unavailing. *See Garay v. Liriano*, 943 F. Supp. 2d 1, 16 (D.D.C. 2013) ("[A] plaintiff must introduce evidence of actual damages resulting from the unlawful entry."). Turpin pleaded no facts which support damages for the alleged unlawful entry. *See* Am. Compl.

Date: July 21, 2023                                   Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division


/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I


/s/ Jessica Krupke
JESSICA KRUPKE
D.C. Bar No. 1019967
JAMES C. UNDERWOOD III
D.C. Bar No. 1765117
Assistant Attorneys General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
Phone:  (202) 727-2125; (202) 701-0255
Email:  jessica.krupke@dc.gov; james.underwood@dc.gov

*Counsel for Defendants District of Columbia and Officer Michael Chen*