UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES TURPIN et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA et al.,<br><br>*Defendants*. | Civil Action No. 22-1807 (TJK) |

**MEMORANDUM OPINION**

Charles Turpin and Regina Jackson sue the District of Columbia and Metropolitan Police Officer Michael Chen over a September 2020 incident in which officers responded to a complaint of a domestic disturbance at Turpin's apartment. They allege that Officer Chen violated their Fourth Amendment rights when he entered the apartment, seized suspected illegal drugs and drug paraphernalia, and arrested them. They also allege that Defendants trespassed under the common law. Defendants move for judgment on the pleadings. They argue that Officer Chen is entitled to qualified immunity on the constitutional claims because Turpin consented to the officers' entry, or, in the alternative, because he was reasonably entitled to rely on the community caretaking doctrine to do so. For substantially the same reasons, they also argue that the trespass claim fails as a matter of law. For the reasons below, the Court will grant the motion and enter judgment for Defendants.

I.   **Background**

Plaintiffs allege that, on the night of September 18, 2020, Officer Chen and fellow Officer Kyle Larrain responded to Turpin's apartment after receiving a report of a "domestic fight." *See* Am. Compl. ¶ 16. As Officers Chen and Larrain approached the apartment building on foot, they

observed Turpin yelling and looking out his third-floor window. *Id.* ¶ 17. Officer Larrain yelled up to Turpin and asked if they could talk to him at his door, and Turpin agreed. Larrain's BWC at 5:34:53–5:35:23.[1] Upon reaching Turpin's door, Officer Larrain knocked, and Turpin asked, "who is it?" *Id.* at 5:35:55–5:36:28. Officer Larrain responded: "the police," to which Turpin replied, "come in, come in." *Id.* at 5:36:28–5:36:35.

Officer Larrain opened Turpin's door, and then Turpin emerged into the hallway, laughing and letting the door swing closed behind him. *Id.* at 5:36:35–5:36:50. Turpin "appeared to be somewhat inebriated." Am. Compl. ¶ 23. Officer Larrain asked Turpin, "what's going on in there," and "are you by yourself in there?" Larrain BWC at 5:36:52–5:37:05. Turpin held his hands out and replied, "you tell me." *Id.* at 5:36:52–5:37:05. Officer Larrain again asked Turpin whether he was alone in the apartment, leading Turpin to turn around and reenter his apartment. *Id.* at 5:37:10–5:37:24. Officer Larrain held the door open, and both officers followed Turpin inside. *Id.* Once inside, after Officer Larrain again asked whether anyone else was in the apartment, Turpin gestured to the open door of his bedroom and motioned to Jackson, stating, "my baby . . . she's right there." *Id.* at 5:37:30–5:37:43.

The officers followed Turpin into the bedroom and continued to question him and Jackson about noise complaints and whether they needed any assistance. *Id.* at 5:37:50–5:40:39. The officers also observed what appeared to be illegal drugs and drug paraphernalia in plain view on a

---

[1] Because the Amended Complaint refers to and is based on body-worn camera (BWC) footage, *see, e.g.*, Am. Compl., ECF No. 35, at 5 n.2, the Court will rely on it in deciding this motion for judgment on the pleadings, *see Johnson v. D.C.*, No. 22-cv-3764 (TSC), 2024 WL 1212988, at *2–3 (D.D.C. Mar. 20, 2024) (relying on BWC footage in deciding motion for judgment on the pleadings and explaining its propriety). And because the footage is "incorporated by reference in[] the complaint itself," the Court may do so "without converting the motion for judgment on the pleadings to one for summary judgment." *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 85 (D.D.C. 2018).

television stand in the bedroom. *See, e.g.*, Chen BWC at 5:38:14-5:38:48; Larrain BWC at 5:38:45–5:39:20; 5:41:58; *see also* Am. Compl. ¶ 29. At one point, Turpin asked Officer Larrain "how is it that you are able to be in my house?" Officer Larrain responded, "we're here because we got a call for service." Larrain BWC at 5:40:20–5:40:39. As a result of what the officers found, Turpin and Jackson were handcuffed, placed under arrest, and taken into custody. Am. Compl. ¶ 29. As he was being handcuffed, Turpin exclaimed "Get out of my house!" Chen BWC at 5:45:40-5:45:55. The next day, the charges against them were no papered and they were released. *Id.* ¶ 33.

In May 2020, Turpin and Jackson sued Officer Chen and the District of Columbia in D.C. Superior Court. *See* ECF No. 1-1. Defendants removed the case to this Court. *See id.* And later, Plaintiffs amended their complaint. *See generally* Am. Compl.[2] They bring four counts. *Id.* ¶¶ 34–63. The first three are brought against Officer Chen under 42 U.S.C. § 1983, alleging that he violated the Fourth Amendment by entering the apartment, seizing the suspected drugs and drug paraphernalia, and arresting Plaintiffs. *Id.* ¶¶ 34–58. The fourth claim is a common-law trespass claim levied against Officer Chen and the District. *Id.* ¶¶ 59–63. Defendants now move for judgment on the pleadings. *See* ECF No. 41.

## II.  Legal Standards

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "[A] Rule 12(c) motion . . . is functionally equivalent to a Rule 12(b)(6) motion." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). In deciding such a motion, "the court

---

[2] Among other things, the Amended Complaint added Officer Larrain as a defendant. But later, the Court dismissed him for failure to serve. *See* ECF No. 48.

may consider facts alleged in the complaint as well as documents attached to or incorporated by reference in the complaint." *Fox v. District of Columbia*, 924 F. Supp. 2d 264, 269 (D.D.C. 2013), *aff'd sub nom.*, 794 F.3d 25 (D.C. Cir. 2015). The Court accepts as true all facts alleged in the opponent's complaint, and "accord[s] the benefit of all reasonable inferences to the non-moving party." *Clark v. Colvin*, 187 F. Supp. 3d 76, 80 (D.D.C. 2016) (quoting *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002)). The Court may grant a motion for judgment on the pleadings "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001).

## III.   Analysis

The Court agrees that Officer Chen is entitled to qualified immunity from liability on Plaintiffs' constitutional claims. In light of Turpin's apparent consent, it would not have been clear to a reasonable officer under the circumstances that Officer Chen's actions violated Plaintiffs' clearly established constitutional rights. Similarly, because of that apparent consent, Plaintiffs' common-law trespass claim fails as a matter of law.

### A.   **Constitutional Claims**

In Counts I–III, Plaintiffs allege that Officer Chen violated their Fourth Amendment rights when he entered the apartment, seized suspected illegal drugs and drug paraphernalia, and arrested them. But qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether an officer is entitled to qualified immunity, courts consider (1) whether the plaintiff has alleged facts showing a violation of a statutory or constitutional right, and (2) "whether the right at issue was 'clearly established' at the time of the [officer's] alleged misconduct." *Id.* at 232. Courts "may grant qualified immunity on

4

the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

For a right to be "clearly established," it must have a "sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019) (per curiam) (cleaned up). That existing precedent should be defined with a high "degree of specificity," especially in the Fourth Amendment context, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks omitted). All this is meant to "protect[] 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Thus, an officer conducting a search "is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44.

The Court need not resolve the first step of the qualified immunity inquiry because there is no set of facts consistent with Plaintiffs' allegations—including the BWC footage—under which the second step would not shield Officer Chen from liability. In other words, there is no set of facts consistent with the allegations in which it would have been clear to a reasonable officer that in taking the steps Officer Chen did, his conduct violated Plaintiffs' clearly established Fourth

Amendment rights.

Under the Fourth Amendment, it is "well settled" that warrantless searches are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). One of those "specifically established exceptions . . . is a search that is conducted pursuant to consent." *Id.* (citations omitted). The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991).

Turpin gave Officer Chen every reason to believe that he consented to the officers' entry into his apartment.[3] After the officers knocked on his door and identified themselves, Turpin invited them to "come in," a phrase he repeated. *See* Larrain BWC at 5:36:29–5:36:36; Am. Compl. ¶ 21. Turpin then stepped out of his apartment for a moment and never withdrew his invitation to "come in." *See* Larrain BWC at 5:36:45–5:37:17. Indeed, as Officer Chen followed Turpin into his apartment less than a minute later, Turpin did not revoke that consent, nor did he suggest that he had never given it in the first place. He did not act surprised or upset, but led both officers to his bedroom to confirm Jackson's presence there. *See Ford v. United States*, 245 A.3d 977, 984–85 (D.C. 2021) ("To revoke consent, a person must act in a manner 'clearly inconsistent with the apparent consent to search.'" (quoting *Burton v. United States*, 657 A.2d 741, 746–47 (D.C. 1994))). There is no authority suggesting, under these circumstances, that Officer Chen violated clearly established law when he acted as he did. *Cf. Robertson v. United States*, 429 A.2d 192, 194 (D.C. 1981) ("[W]hen the officers approached the door to appellant's house they were

---

[3] The Court need not reach Officer Chen's arguments for qualified immunity based on the community caretaking doctrine.

invited in by appellant. There is no indication that appellant's invitation was the result of police coercion or undue influence. Thus the officers' entry into the dwelling was on the basis of appellant's consent voluntarily given.").

Plaintiffs argue that Turpin never consented to the officers' entry. *See* ECF No. 43 at 7–9. They argue that Turpin's initial invitation to "come in" did not have a "lasting effect" and that "a reasonable officer would seek consent" again after Turpin exited his apartment to greet the officers. *Id.* at 8. The Court is not close to persuaded. They point to no clearly established law suggesting that under the circumstances here, the officers had no right to construe Turpin's invitation as consent, or that somehow, before they entered the apartment quickly afterward, they should have considered that consent withdrawn. The closest they come is by citing *United States v. Evans*, 194 F. Supp. 90 (D.D.C. 1961). But even putting aside the different facts that case presented, a decision of a district court cannot clearly establish the law for qualified immunity purposes. Generally speaking, "for the law to be clearly established, there must be a Supreme Court or [] Circuit decision on point." *Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015).

Beyond that, Plaintiffs argue that any apparent consent by Turpin was not "unequivocal and specific." *See Judd v. United States*, 190 F.2d 649, 651 (D.C. Cir. 1951) (citation omitted). Nonsense. And they argue that Turpin's mental condition appeared to have been impaired, which a reasonable officer should have understood called into question his ability to consent. *See* ECF No. 43 at 18. Not so. From a view of the BWC footage, Turpin did not appear to a reasonable officer to be so impaired as to be unable to provide consent. And several courts have held that even an individual under the influence of illegal drugs can voluntarily consent to a search. *See, e.g., United States v. Howland*, 232 F.3d 897, 898 (9th Cir. 2000) (unpublished table decision) ("This Court has held that when the person giving consent is neither 'unconcious [*sic*] or

7

comatose,' where her answers are coherent and responsive, and where she remembers basic facts such as her current residence, the consent may be voluntary and knowing even if the person is under the influence of narcotics."). Plaintiffs point to no clearly established law to the contrary.

Because Officer Chen's entry into Turpin's apartment did not violate clearly established law, neither did his actions that followed, and Plaintiffs do not seriously argue otherwise. Inside the apartment, the officers saw what they reasonably believed to be illegal drugs and drug paraphernalia readily apparent and clearly visible, and then seized them. Under the "plain-view" doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). And after seeing the suspected contraband, the officers had probable cause to arrest Plaintiffs for unlawful possession. *See, e.g.*, *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993) ("That he was present, for whatever reason, when the drugs were in plain view . . . makes it more likely than not that he was involved in some way in the criminal activity . . . ."). Plaintiffs identify no clearly established law that suggests that these commonsense steps taken by the officers were unlawful under these circumstances, instead merely reciting the contours of the Fourth Amendment generally. *See* ECF No. 43 at 19.[4]

For these reasons, Officer Chen is entitled to qualified immunity for the alleged

---

[4] Plaintiffs point out that at one point, Turpin asked the officers, "how is it that you are able to be in my house?" Chen BWC at 5:40:21–5:40:35. Whatever the significance of that question, it would not have made clear to a reasonable officer that his continued presence, after Turpin had already clearly consented to his entry into the apartment, violated Plaintiffs' clearly established constitutional rights. Indeed, once it was clear Turpin was being placed under arrest, he demonstrated that he knew how to revoke the consent he had given the officers by ordering them to leave. Finally, in any event, Turpin asked this question only *after* the officers had seen what appeared to be illegal drugs and drug paraphernalia in plain view, at which point their continued presence was justified. *See id.* at 5:38:14-5:38:48; Larrain BWC at 5:38:45–5:39:20.

constitutional violations brought by Plaintiffs. Thus, he is entitled to judgment on the first three counts of the Amended Complaint.

### B.    Common-Law Trespass Claim

In Count IV, Plaintiffs allege that Officer Chen and the District committed the common-law tort of trespass. In the District of Columbia, the tort of trespass consists of "the intentional intrusion of a person or thing upon property that invades and disrupts the owner's exclusive possession of that property." *Robinson v. Farley*, 264 F. Supp. 3d 154, 163 (D.D.C. 2017) (quoting *Garay v. Liriano*, 943 F. Supp. 2d 1, 25 (D.D.C. 2013)). The three elements of trespass are: "(i) an unauthorized entry (ii) onto the plaintiff's property (iii) that interferes with the plaintiff's possessory interest." *See Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 118 (D.D.C. 2018) (quoting *Council on Am.–Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 344 (D.D.C. 2011)). For largely the same reasons discussed above, Plaintiffs cannot show that the officers should be liable for an "unauthorized entry," given Turpin's invitation to "come in." In the trespass context, "[i]f words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are effective as consent in fact." *See IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 124–25 (D.D.C. 2018) (quoting Restatement (Second) of Torts § 892(2) (Am. Law Inst. 1965–1979)). Here, Turpin's invitation to "come in" was "reasonably understood by [the officers] to be intended as consent," and so no relief is warranted under any set of facts that could be proved consistent with the allegations here. *Id*. Thus, he and the District of Columbia are entitled to judgment on the pleadings for the last count of the Amended Complaint as well.[5]

---

[5] Similarly, although the Court need not decide whether Turpin's invitation provided legally sufficient consent under the Fourth Amendment for Officer Chen to enter the apartment—only that he did not violate clearly established law in doing so—the Court notes that "where officers lawfully enter a house, the entry will not constitute a trespass." *Garay*, 943 F. Supp. 2d at 25.

## IV. Conclusion

For all the above reasons, the Court will grant Defendants' Motion for Judgment on the Pleadings and enter judgment for Defendants on all counts. A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: March 27, 2024